UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHRISTINE GAMACHE,

    Plaintiff,

v.

EDWARD BYLSMA, et al.,

    Defendants.

CASE NO. C15-5154 BHS

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S UNLAWFUL ARREST CLAIM

    This matter comes before the Court on Defendants Edward Bylsma, Robin Yakhour, Craig Randall, Russ Bradseth, Barry Folsom, John Doe, Richard/Rachel Roe(s), and Clark County's (collectively "Defendants") motion for summary judgment (Dkt. 14). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

    On March 13, 2015, pro se Plaintiff Christine Gamache ("Gamache") filed a 42 U.S.C. § 1983 suit against Defendants. Dkt. 1. Among other things, Gamache alleges

ORDER - 1

Clark County police officers violated her Fourth Amendment rights by arresting her without probable cause on January 8, 2013 and July 16, 2013. Dkt. 24 ("Comp.") ¶ 60.

On August 28, 2015, Defendants moved for summary judgment. Dkt. 14. Gamache did not file a response. On October 26, 2015, the Court construed Defendants' motion in part as a motion to dismiss and in part as a motion for summary judgment. Dkt. 19. The Court granted Defendants' motion to dismiss on some of Gamache's claims and granted Gamache leave to amend her complaint. *Id.* The Court also issued a *Rand* notice and renoted Defendants' motion for summary judgment to November 20, 2015. *Id.*

On November 17, 2015, Gamache responded to Defendants' motion. Dkt. 20. On November 20, 2013, Defendants replied. Dkt. 22. On November 26, 2015, Gamache filed an amended complaint. Comp.

On December 22, 2015, the Court requested additional briefing on the circumstances of each arrest. Dkt. 27. Defendants' motion for summary judgment was renoted to January 11, 2016. *Id.* On January 4, 2016, the parties filed their opening briefs. Dkts. 29, 33. On January 11, 2016, the parties filed their responsive briefs. Dkt. 35, 36.

## II. FACTUAL BACKGROUND

**A.  January 8, 2013 Arrest**

On January 7, 2013, Ellen Dean ("Dean") contacted the Clark County Sheriff's Office about a dispute she was having with Gamache over a Mastiff dog named Sage.

Dkt. 30, Declaration of Edward Bylsma ("Bylsma Dec.") ¶ 8.[1]  Deputy Edward Bylsma ("Deputy Bylsma") was assigned to investigate.  *Id.*  Through his professional and personal experience, Deputy Bylsma was familiar with dog breeding, registering dogs with the American Kennel Club ("AKC"), and bills of sale for dogs.  *Id.* ¶ 7.

Deputy Bylsma began his investigation by talking with Dean.  *Id.* ¶ 8.  Dean told him that she purchased Sage from Gamache in October 2009.  *Id.* ¶ 10.  Dean informed Deputy Bylsma that the purchase price for Sage was $900 and the purchase was completed in November 2009.  *Id.*  Dean gave Deputy Bylsma a bill of sale for Sage that included a purchase plan.  *Id.*  The bill of sale was signed by both Dean and Gamache and dated October 16, 2009.  Bylsma Dec., Ex. B.  The bill of sale further states Gamache would hold the papers in her name to show Sage in competitions.  *Id.*

Dean told Deputy Bylsma that Gamache contacted her earlier that month about Sage's health.  Bylsma Dec. ¶ 13.  According to Dean, Gamache was aware Sage had a growth on her leg and thought the growth might be cancerous.  *Id.*  Dean agreed to have Gamache take Sage to the vet for surgery and then return the dog to Dean.  *Id.* ¶ 14.  This agreement was formalized in writing.  *Id.*

Dean then gave Deputy Bylsma two documents.  *Id.*  The first document is signed by Gamache and dated January 6, 2012.  Bylsma Dec., Ex. C.  It provides: "Picking Sage up to remove mass on rear right leg on Monday 1/7/12.  Will bring her to Ellen on 1/7/12

---

[1] Gamache argues the Court should strike Deputy Bylsma and Deputy Yakhour's statements.  Dkt. 36 at 2.  Gamache, however, has not provided any evidentiary basis for striking their declarations.

1  in the eve when done." *Id.*  The second document is signed by both Dean and Gamache

2  and dated January 7, 2013.  Bylsma Dec., Ex. D.  It states that "Christine G is taking Sage

3  English mastif[f] female from Ellen Dean on 1-6-13 to take to my vet on 1-7-13 to do

4  sergury [sic] on her leg bump and will return 'Sage' to Ellen Dean 1-7-13 after sergury

5  [sic]."  Bylsma Dec., Ex. D.  Gamache did not return Sage to Dean after the surgery.

6  Bylsma Dec. ¶ 17.  Dean told Deputy Bylsma she did not give Sage to Gamache to keep.

7  *Id.*

8        After talking with Dean, Deputy Bylsma contacted Gamache by phone to get her

9  side of the story.  *Id.* ¶ 18.  According to Deputy Bylsma, Gamache told him she was part

10  owner of Sage and that Sage was not healthy due to fleas.  *Id.*  Deputy Bylsma asked

11  Gamache if she was going to return the dog to Dean.  *Id.*  Gamache said, "No."  *Id.*

12  Deputy Bylsma informed Gamache that she could be arrested for theft if she did not

13  return the dog.  *Id.*  According to Deputy Bylsma, Gamache said she was not going to

14  return the dog.  *Id.* ¶ 19.

15        The next morning, Deputy Bylsma and Deputy Robin Yakhour ("Deputy

16  Yakhour") went to Gamache's house to further investigate.  *Id.* ¶ 20.  The deputies

17  knocked on the front door, and Gamache came outside to speak with them.  *Id.* ¶ 22.

18        Gamache says she gave Deputy Bylsma documentation that she was the owner of

19  Sage.  Dkt. 20-2, Declaration of Christine Gamache ("Gamache Dec.") ¶ 2.  According to

20  Gamache, these documents included Sage's microchip registration dated July 2008, as

21  well as a document signed by Dean and dated July 30, 2014, in which Dean agrees to

22

give Sage to an individual named Mary Holmes ("Holmes").[2] *See id.*; Dkt. 20-3 at 1–2. Gamache says Deputy Bylsma refused to consider these documents. Gamache Dec. ¶ 2.

According to Deputy Bylsma, Gamache gave him documents that showed Gamache had registered Sage with the AKC. Bylsma Dec. ¶ 22. The AKC registration for Sage is dated November 2008. Dkt. 36-1 at 7. It states that Sage was born in June 2008 and lists Gamache as the owner. *Id.* Deputy Bylsma was familiar with AKC registration, and believed the documents did not show that Gamache was Sage's owner. Bylsma Dec. ¶¶ 23–24. Deputy Bylsma told Gamache that the documents did not show she owned Sage. *Id.* ¶ 24. According to Deputy Bylsma, Gamache did not refute the bill of sale or say the sale of Sage to Dean was invalid. *Id.* ¶ 25.

Deputy Bylsma again asked Gamache if she was going to return the dog to Dean, and she said, "No." *Id.* ¶ 26. At this time, Deputy Bylsma believed he had probable cause to arrest Gamache without a warrant for second-degree theft under RCW 9A.56.040. *Id.* ¶ 27. Deputy Yakhour agreed. *Id.* ¶ 29; Dkt. 31, Declaration of Robin Yakhour ("Yakhour Dec.") ¶ 11. Deputy Bylsma arrested Gamache, and she was transported to the Clark County Jail. Bylsma Dec. ¶ 30. Gamache was later charged with second-degree theft, as well as taking, concealing, injuring, or killing pet animals in violation of RCW 9.08.070(1). Dkt. 15, Declaration of Nicole Davis ("Davis Dec."), Ex. C.

---

[2] Defendants object to the documents submitted by Gamache on several grounds. Dkt. 22 at 3; Dkt. 35 at 2. The Court recognizes Defendants' evidentiary objections. The documents, however, are not material to the outcome.

### B. July 16, 2013 Arrest

Deputy Yakhour continued to investigate the January 2013 incident. Yakhour Dec. ¶ 14. As part of this investigation, Deputy Yakhour obtained statements from two breeders, Doreen Dysert ("Dysert") and Laura Olsen ("Olsen"), about Sage's value. *Id.* Deputy Yakhour also contacted two individuals, Robin Wheelon ("Wheelon") and Allison Rogers ("Rogers"), who had similar experiences with Gamache. *Id.* The statements from these four individuals were used in the January 2013 criminal matter, and the individuals were likely to testify at trial. Yakhour Dec., Ex. A at 16.

On July 5, 2013, Deputy Yakhour received a report from Wheelon that Gamache was sending her harassing emails. Yakhour Dec. ¶ 15. Wheelon also told Deputy Yakhour that Gamache had emailed Dysert, Rogers, and Olsen. *Id.* ¶ 17. After talking with Wheelon, Deputy Yakhour contacted Dysert and Rogers. *Id.* ¶¶ 19, 21. Dysert and Rogers told Deputy Yakhour they had also received emails from Gamache. *Id.* Wheelon, Dysert, and Rogers felt the emails were harassing and threatening. *Id.* ¶¶ 16, 19, 21.

Deputy Yakhour obtained copies of the emails. *Id.* ¶¶ 18, 19, 21. One of the emails was sent from "cjoygamache@yahoo.com" and signed "Christine Gamache." Yakhour Dec., Ex. E at 74. The email states: "Lawyer up. Perjury is considered a serious offense as it can be used to usurp the power of the courts, resulting in miscarriages of justice. . . . Federal law classifies perjury as a felony and provides for a prison sentence of up to five years." *Id.* Similarly, another email was sent from "cjoygamache@yahoo.com" and signed "Christine Gamache." *Id.* at 75. The subject

1  line reads "Get a lawyer fast!" *Id.* The email goes on to state: "You will need him get
2  ready to spend $ and be hung up in court in front of a jury. I still have our agreement
3  signed. Time to start to stress. Everything comes out in the end and the Truth is just
4  that." *Id.*

5      As a result of her investigation, Deputy Yakhour believed she had probable cause
6  to arrest Gamache for witness tampering under RCW 9A.72.120. Yakhour Dec. ¶ 23.
7  On July 15, 2015, Deputy Yakhour requested a search warrant to search Gamache's
8  home and seize all computers, laptops, computer hard disk drives, and computer data
9  storage devices. Yakhour Dec., Ex. A. Deputy Yakhour also requested authorization to
10 arrest Gamache. *Id.* Deputy Yakhour supported the warrant application with an affidavit
11 and attached the emails she obtained from Wheelon, Dysert, and Rogers. *Id.* A state
12 court judge approved the warrant on July 15, 2013. *Id.*

13     On the morning of July 16, 2013, Deputy Yakhour, Sergeant Craig Randall
14 ("Sergeant Randall"), and Deputy Barry Folsom ("Deputy Folsom") executed the
15 warrant. Yakhour Dec. ¶ 21. At that time, Gamache admitted she had sent the emails.
16 *Id.* ¶ 26. Gamache was taken into custody and charged with witness tampering. *Id.* ¶ 26;
17 Davis Dec., Ex. G.

18     The January 2013 and July 2013 criminal matters were consolidated, and
19 Gamache was ultimately charged with second-degree theft and three counts of
20 cyberstalking. Davis Dec., Exs. A, H. At trial, Gamache was found not guilty of one
21 cyberstalking charge. Davis Dec., Ex. I. A mistrial was found as to second-degree theft
22

and another cyberstalking charge. *Id.* The remaining cyberstalking charge was dismissed without prejudice to be refiled in district court. Davis Dec., Ex. J.

### III. DISCUSSION

Defendants move for summary judgment on Gamache's unlawful arrest claim, arguing the officers are entitled to qualified immunity.[3] Dkt. 14 at 12–18.

**A.     Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477

---

[3] Gamache alleges several claims under § 1983. In their summary judgment motion, Defendants specifically argued qualified immunity only in the context of Gamache's unlawful arrest claim. *See* Dkts. 14, 22; *see also* Dkts. 29, 35.

U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

**B.    Qualified Immunity**

Qualified immunity shields government officials from civil liability unless a plaintiff demonstrates: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011). The Court has discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### C. Unlawful Arrest

Gamache claims the officers violated her Fourth Amendment rights by arresting her without probable cause. Comp. ¶ 60. In the context of an unlawful arrest claim, the two prongs of the qualified immunity analysis are: "(1) whether there was probable cause for the arrest; and (2) whether it is *reasonably arguable* that there was probable cause for the arrest—that is, whether reasonable officers could disagree as to the legality of the arrest such that the arresting officer is entitled to qualified immunity." *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1076 (9th Cir. 2011).

With regard to the first inquiry, "[a]n officer has probable cause to make a warrantless arrest when the facts and circumstances within his knowledge are sufficient for a reasonably prudent person to believe that the suspect has committed a crime." *Id.*; *see also United States v. Alaimalo*, 313 F.3d 1188, 1193 (9th Cir. 2002) ("Probable cause requires only a fair probability or substantial chance of criminal activity . . . ."). "The analysis involves both the facts and the law. The facts are those that were known to the officer at the time of the arrest. The law is the criminal statute to which those facts apply." *Rosenbaum*, 663 F.3d at 1076. The plaintiff bears the burden of proving the absence of probable cause. *Beck v. City of Upland*, 527 F.3d 853, 864 (9th Cir. 2008).

As for the second inquiry, "[an] officer may still be immune from suit if it was objectively reasonable for him *to believe* that he had probable cause." *Rosenbaum*, 663 F.3d at 1078. Put another way, "the question in determining whether qualified immunity applies is whether all reasonable officers would agree that there was no probable cause" to arrest the suspect. *Id.*

With these standards in mind, the Court turns to the circumstances for each arrest.

**1.     Second-Degree Theft**

Gamache was arrested without a warrant for second-degree theft on January 8, 2013. In Washington, "a person is guilty of theft in the second degree if he or she commits theft of . . . property or services which exceed(s) seven hundred fifty dollars in value but does not exceed five thousand dollars in value . . . ." RCW 9A.56.040. "Theft" means "[t]o wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services." RCW 9A.56.020.

Even when viewed in the light most favorable to Gamache, the evidence in the record shows that Deputy Bylsma had probable cause to arrest her for second-degree theft. Before arresting Gamache, Deputy Bylsma spoke with both Dean and Gamache. Dean told him she purchased Sage from Gamache for $900 in 2009. Dean also told him that Gamache had agreed to return Sage after taking the dog to the vet, but that Gamache failed to do so. Meanwhile, Gamache told him she would not return the dog because she was part owner and the dog had fleas. Deputy Bylsma, however, had a copy of the bill of sale for Sage, which showed Sage had been sold to Dean in 2009. According to Deputy Bylsma, Gamache did not refute the bill of sale or say the sale of the dog to Dean was invalid.

In addition to talking with Dean and Gamache, Deputy Bylsma reviewed several documents, including the bill of sale, the January 2013 agreement, and the AKC registration. The bill of sale indicates Dean purchased Sage from Gamache in 2009 and

Gamache would remain named on the paperwork to show the dog. The bill of sale also indicates Sage was worth at least $900. As for the January 2013 agreement, it provides that Gamache would take Sage to the vet and then return the dog to Dean. Finally, the AKC registration shows Gamache registered Sage with the AKC in 2008, prior to the bill of sale in 2009. Based on his professional and personal experience with the AKC, Deputy Bylsma believed the AKC registration did not show that Gamache was Sage's owner.

Taken together, this information would cause a prudent person to believe that Gamache had wrongfully obtained or exerted unauthorized control over Dean's property, Gamache intended to do so, and the property was between $750 and $5,000 in value. Deputy Bylsma therefore had probable cause to arrest Gamache for second-degree theft.

Gamache raises several arguments as to why Deputy Bylsma lacked probable cause. First, Gamache argues Deputy Bylsma relied on nothing more than Dean's statements. Dkt. 20 at 6. Gamache is correct that an officer may not rely only on an individual's claim that she was the victim of a crime to establish probable cause. *Aprin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001). Deputy Bylsma, however, has submitted evidence showing his decision to arrest Gamache was based on (1) Dean's statements, (2) the bill of sale, (3) the January 2013 agreement, (4) Gamache's statements, (5) the AKC registration, (6) his personal and professional experience with dog sales and registration, and (7) Gamache's failure to provide credible documentation that she was Sage's owner. Bylsma Dec. ¶¶ 7, 28; *see also* Bylsma Dec., Ex. A. In light of this evidence, Gamache's argument is unavailing.

Next, Gamache asserts she gave the officers documents that showed she was Sage's owner. Dkt. 35 at 5; Gamache Dec. ¶ 2. According to Gamache, these documents include Sage's microchip registration and a document in which Dean agrees to give Sage to Holmes. Although Gamache argues otherwise, these documents do not prove the absence of probable cause. The microchip registration is dated in 2008. As discussed above, Deputy Bylsma had the bill of sale between Dean and Gamache, which was dated in 2009—after the microchip registration. Thus, the microchip registration in 2008 does not show that Gamache was Sage's owner in 2013. The second document is dated July 30, 2014, over a year and a half after Gamache's arrest. It is unclear how Gamache was able to give Deputy Bylsma a document dated July 2014 in January 2013. In any event, no reasonable juror could find that a document from July 2014 negates probable cause for an arrest in January 2013. Even if the document was dated prior to January 2013, the document merely shows that Dean agreed to give Sage to Holmes, not Gamache.

Finally, Gamache contends that Deputy Bylsma should have conducted a more thorough investigation prior to arresting her. Dkt. 33 at 6. "Once probable cause to arrest someone is established, however, a law enforcement officer is not required by the Constitution to investigate independently every claim of innocence." *Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003) (internal quotation marks and citation omitted).

Even assuming Deputy Bylsma lacked probable cause to arrest Gamache, Deputy Bylsma would still be entitled to qualified immunity. Under the circumstances outlined above, it was objectively reasonable for Deputy Bylsma to believe Gamache committed second-degree theft. Accordingly, the Court concludes Deputy Bylsma is entitled to

qualified immunity on Gamache's unlawful arrest claim with respect to the January 2013 arrest.

### 2. Witness Tampering

Gamache was also arrested for witness tampering on July 16, 2013. Under Washington law,

> [a] person is guilty of tampering with a witness if he or she attempts to induce a witness or person he or she has reason to believe is about to be called as a witness in any official proceeding or a person whom he or she has reason to believe may have information relevant to a criminal investigation . . . to:
> (a) Testify falsely or, without right or privilege to do so, to withhold any testimony; or
> (b) Absent himself or herself from such proceedings . . . .

RCW 9A.72.120.

In contrast to the January 2013 arrest, the July 2013 arrest was made pursuant to a warrant; Deputy Yakhour obtained a facially valid warrant to arrest Gamache for witness tampering. *See* Yakhour Dec., Ex. A. "It is well established that, in an action for unlawful arrest pursuant to a facially valid warrant, a police officer is entitled to qualified immunity unless 'no officer of reasonable competence would have requested the warrant.'" *Case v. Kitsap Cnty. Sheriff's Dep't*, 249 F.3d 921, 926 (9th Cir. 2001); *see also Mills v. Graves*, 930 F.2d 729, 731 (9th Cir. 1991) ("[I]mmunity will be lost only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable.").

Viewing the evidence in the light most favorable to Gamache, it was reasonable for Officer Yakhour to request the warrant. Before obtaining the warrant, Deputy

ORDER - 14

1  Yakhour talked with Wheelon, Rogers, and Olsen about the emails they received from
2  Gamache. Wheelon, Rogers, and Olsen provided statements in the January 2013 criminal
3  matter, and were likely to testify at trial. The three individuals told Deputy Yakhour they
4  felt the emails from Gamache were harassing and threatening. In addition to obtaining
5  statements from these individuals, Deputy Yakhour reviewed the emails in question. The
6  emails are signed "Christine Gamache," and include statements about perjury and getting
7  a lawyer. These circumstances provided a reasonable basis for believing Gamache
8  committed the crime of witness tampering.

9  Additionally, the warrant application contains sufficient indicia of probable cause.
10  In an affidavit, Deputy Yakhour detailed her investigation and the statements from
11  Wheelon, Rogers, and Olsen. Deputy Yakhour also included copies of the emails in the
12  application. Gamache does not point to any evidence that contradicts the facts underlying
13  the warrant. Indeed, Gamache concedes that she sent the emails and that the officers had
14  them in their possession. Dkt. 33 at 6–7.

15  Gamache nevertheless argues that "the state also [k]new that those persons would
16  not be called as witnesses." Dkt. 33 at 7. Gamache, however, does not provide any
17  evidentiary support for this argument nor does she clarify who is "the state." Gamache
18  also contends that there was no probable cause because she was acquitted of one of the
19  cyberstalking charges. Dkt. 36 at 2. Gamache's acquittal does not undermine the basis
20  for the warrant. *See United States v. Noster*, 590 F.3d 624, 629 (9th Cir. 2009)
21  ("Probable cause does not require proof beyond a reasonable doubt of every element of
22  the crime."). Finally, Gamache argues that the July 2013 arrest was "tainted" by the

January 2013 warrantless arrest. Dkt. 33 at 8. This argument is without merit. As discussed above, there was probable cause for the January 2013 arrest. Moreover, courts have routinely determined that the exclusionary rule does not apply in the § 1983 context. *See, e.g.*, *Smith v. Kelly*, C11-623RAJ, 2013 WL 5770337, at *9–14 (W.D. Wash. Oct. 24, 2014) (collecting cases).

For these reasons, the Court concludes that the officers are entitled to qualified immunity on Gamache's unlawful arrest claim with respect to the July 2013 arrest.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Defendants' motion for summary judgment on Gamache's unlawful arrest claim (Dkt. 14) is **GRANTED**. Gamache's remaining claims are still pending at this time.

Dated this 19th day of February, 2016.

BENJAMIN H. SETTLE
United States District Judge